## SHARP'S ADM'R *vs.* SHARP.

[FINAL SETTLEMENT OF ACCOUNTS OF ADMINISTRATOR OF INSOLVENT ESTATE.]

1. *Failure to file claim against insolvent estate.*—If a claim against an insolvent estate is not filed within the time prescribed by law, (Code, § 1847,) it loses its character as a subsisting debt, and the representative of the estate is neither bound nor authorized to pay it out of the assets.

2. *Construction of legacy, as to words of survivorship and substitution.*—Where a testator bequeathed the general residuum of his estate to his wife for life, " and after her death to be equally divided among my [his] surviving children or their children,"—*held*, that whether the words of survivorship related to the testator's death, or to the subsequent death of the widow, the personal representative of one of the children, who survived the testator, but died before the widow, leaving children who survived her, was not entitled to any portion of the property as assets of his intestate's estate.

APPEAL from the Probate Court of Macon.

In the matter of the estate of William S. Sharp, deceased, which was declared insolvent in December, 1854, on the report of Arnold Seale and Jehu Sharp, the executors of his last will and testament; and said Arnold Seale thereupon appointed administrator by the court. On final settlement of said administrator's accounts, the decedent's widow moved the court to charge him with the sum of $3,139 94, received by him on the 5th February, 1856, from the executor of William Sharp, deceased,

who was the father of said William S. Sharp, and who died in Georgia, where he resided, in 1845; and whose last will and testament, dated March 17, 1845, and duly admitted to probate in Georgia, contained the following provisions: "*Item* 2d. As I have given to each of my children two thousand dollars, except my daughter Elizabeth H. Stone, who only has received one thousand dollars, I give and desire to be paid to each of my grand-daughters, the children of the said Elizabeth H., the sum of two hundred and fifty dollars each, when they shall arrive at age, or marry. *Item* 3d. The remainder of my estate, both real and personal, I wish and desire to remain in the hands of my beloved wife, during her natural lifetime, for her benefit and use, and after her death to be equally divided among my surviving children or their children." It was proved, that the widow of said William Sharp died in 1853; that William S. Sharp, the son, survived her, and left children living at his death who were still alive; and that the administrator received said sum of money from the executor of William Sharp, under the third item of the will. The administrator insisted, that this money was not assets of the estate of William S. Sharp, but belonged to his surviving children; but the court sustained the motion of the widow, and charged him with the amount, together with interest from the time it was received; to which the administrator excepted.

The administrator asked the court to allow him a credit for $2,500, paid by him to Jefferson R. Herrin, as the administrator of William Herrin, deceased. In reference to this item it appeared, that William S. Sharp was the executor of said William Herrin, and died without having made a final settlement of his accounts; that Arnold Seale and Jehu Sharp, as the executors of said William S. Sharp, made a final settlement with said probate court, in the spring of 1854, of their testator's said executorship, and a decree was rendered against them, in favor of Jefferson R. Herrin, as administrator *de bonis non* of said William Herrin, for about $23,000; that this decree was not filed, as a claim against the estate of said William S. Sharp, within the time prescribed by section 1847 of the

Code; that the administrator paid $ 2,500 on this decree, out of the money received by him from the executor of William Sharp, as above stated; and that said money was not received by him until after the expiration of the time allowed for filing claims against the estate, and was not returned or reported by him in his report of insolvency, or in any of his settlements afterwards made. The court refused to allow the credit, and the administrator excepted.

These two rulings of the court are now assigned as error.

CLOPTON & LIGON, for appellant.

R. W. WALKER, J.—1. The court did not err, in refusing to allow the appellant credit for the amount paid by him on the decree in favor of Jefferson R. Herrin, administrator *de bonis non* of Wm. Herrin. That decree, not having been filed within the required period as a claim against the estate, lost its character as a subsisting debt; and the appellant was not bound, and had no legal right, to apply the assets of the estate towards its payment. Murdock v. Rousseau, 32 Ala. 611; Sharp v. Herrin, 32 Ala. 502; Code, § 1847; Puryear v. Odom, Puryear, at the last term.

2. Where a testator gives property to his surviving children, or to his children or the survivor of them, or to the · survivors of any persons or class of persons; and a prior life, or other particular estate, is interposed, so that the gift is not to take effect in possession immediately on the testator's death, but only on the termination of such precedent estate,—the question as to the period to which the words of survivorship will be applied, is one in reference to which there is a most embarrassing conflict of authority.

The doctrine of the earlier English cases was, that in the absence of expressions strongly indicating a contrary intent, words of survivorship should, in this class of cases, be applied to the death of the testator; and the courts of New York, Pennsylvania, Virginia, and Georgia, have

adopted the same rule.—See, Stringer v. Phillips, 1 Eq. Cas. Abr.; Rose v. Hill, 3 Burr. 1881; Wilson v. Brown, 3 Brown's P. R. 195; Roebuck v. Dean, 2 Vesey, Jr. 265; Perry v. Woods, 3 Vesey, 204; Garland v. Thomas, 1 Bos. & Pull. 82; Edwards v. Symons, 6 Taunt. 213; Moore v. Lyons, 25 Wend. 119; Mowatt v. Carow, 7 Paige, 340; Johnson v. Morton, 10 Barr, 245; Manderson v. Lakens, 23 Penn. 31; Hansford v. Elliott, 9 Leigh, 79; Martin v. Kirby, 11 Grattan, 67; Vickers v. Stone, 4 Geo. 461.

On the other hand, the weight of the more recent English authorities inclines in favor of the rule, that where possession of the subject of the gift is postponed until the termination of a prior life, or other particular estate, words of survivorship will be referred to the period of division or enjoyment, rather than to the death of the testator, unless a contrary intent be especially shown by other expressions in the context; and this has been adopted as a sound rule of construction, by the courts of Massachusetts, New Jersey, North Carolina, and South Carolina. Cripps v. Walcott, 4 Madd. 11; Home v. Pillans, 2 M. & K. 15; Wordsworth v. Wood, 2 Beav. 28; Taylor v. Beverley, 1 Collyer, 108, 111; Neathway v. Reed, 17 Eng. L. & Eq. 150; Pope v. Whitcomb, 3 Russ. 124; Gibbs v. Tait, 8 Sim. 132; Buckle v. Fawcett, 4 Hare, 536; Wordsworth v. Wood, 1 Cl. & F. (N. S.) 152; 15 Sim. 1, 139; 2 Collier, 85; 1 Vesey, Jr. 408, note to Sumner's ed.; 2 Jarman on Wills, 649–50–1; Hulbert v. Emerson, 16 Mass. 244; Holcombe v. Lake, 4 Zabr. 686; Williamson v. Chamberlain, 2 Stock. Ch. 373; Biddle v. Hoyt, 1 Jones,' Eq. 159; Vass v. Freeman, 3 Jones' Eq. 224; Hilliard v. Kearney, Busbee's Eq. 221; Schoppert v. Gillam, 6 Rich. Eq. 83; Carson v. Kennerly, 8 Rich. Eq. 259; Evans v. Godbold, 6 Rich. Eq. 26.

The record does not furnish any evidence of the circumstances surrounding the testator when the will was made. In the 2d clause, mention is made of a daughter, and bequests are made to his grand-children, the children of this daughter. It may be that this daughter had died before the making of the will; and if so, that circum-

stance might be considered as shedding an important light upon the meaning of the words 'my surviving children.'—See Hansford v. Elliott, 9 Leigh, 96 ; Neathway v. Reed, 17 Eng. L. & Eq. 151—3 ; Martin v. Kirby, 11 Gratt. 75. Without the benefit of such aid as might be derived from a knowledge of the condition of the testator's family, and of the other extrinsic circumstances surrounding him at the time the will was executed, we prefer to withhold any definitive opinion as to the period of time to which the words of survivorship are to be applied. Indeed, the exigencies of this case do not require that we should express an opinion on this point. For, if we concede that the words "surviving children" embrace all those who survived the testator, and are not to be considered as descriptive of such only of the children as should be living at the death of the tenant for life; still, it by no means follows, that under this clause of the will, the administrator of one of the children who died during the tenancy for life, leaving children who survived the life tenant, would be entitled to a share of the property as assets of the estate of such deceased child. Supposing the words of survivorship to relate to the death of the testator, and thus to include all the children who survived that event, the true construction of the alternative words, "or their children," would be, that they were designed to provide for the children of any child of the testator, who, though surviving the death of the testator, might die in the life-time of the tenant for life, leaving children ; and that on the happening of such a contingency, the interest which, on the death of the testator, vested in such deceased child, would be divested, and his children would take by substitution for him. "A bequest to A for life, and after his death to B or his children, is held to create a substitutional gift in favor of the children of B, in the event of B dying in the life-time of A."—2 Jarm. Wills, 666, 664–5 ; 1 Jarm. Wills, 454 ; Girdlestone v. Doe, 2 Sim. 225 ; Hervey v. McLaughlin, 1 Price, 264 ; Jones v. Torin, 6 Sim. 255 ; Shailer v. Groves, 6 Hare, 162 ; 2 Wms. Exrs. 956 ; 2 Spence's Eq. Jur. 472 ; Sugd. Prop. 411–12. See, also, Martin v. Kirby,

11 Gratt. 76–7 ; Browne v. Lord Kenyon, 3 Madd. 410 ; 25 Wend. 143, opinion of Walworth, Ch. ; Kersh v. Younge, 7 Rich. Eq. 100 ; Lowry v. O'Brien, 4 Rich. Eq. 262 ; Lejeune v. Lejeune, 2 Keen, 701, and *note* ; Gettings v. McDermott, 2 M. & R. 69 ; Salisbury v. Petty, 3 Hare, 85.

The words, "my surviving children, *or their children,*" literally construed, would embrace only the children who should survive and their children. Still continuing the supposition that the words of survivorship relate to the death of the testator,—if "*their* children" means the children of the testator's "surviving children," and the construction which is above suggested of the alternative words is rejected, it is impossible to render this provision of the will at all sensible, without reading "*or*" for "*and;*" a liberty which courts sometimes take, but only in cases where it is clearly authorized by the intention and meaning of the testator, as collected from the whole will. O'Brien v. Heeney, 2 Edw. 248 ; Speakman v. Speakman, 8 Hare, 185, (note to the Amer. ed.) and cases cited. It certainly would be a forced construction of this will, to hold that the testator intended the property to be divided among his surviving children, *and* the children of his surviving children. Upon that construction, such children and grand-children would take *per capita,* not *per stirpes.* Smith v. Ashurst, 34 Ala. 208; Wessenger v. Wessenger, 9 Rich. Eq. 459 ; Barksdale v. Macbeth, 7 Rich. Eq. 125. Such a distribution of the property would defeat the obvious wishes of the testator.

Whether, therefore, we interpret the words ' my surviving children' to embrace all the children of the testator who survived his death, or as only including those who might be living when the life estate of the widow fell in, the result is still the same. Hence, without at this time deciding to what period these words of survivorship are applicable, it is sufficient for us to say that, upon the whole case as made by this record, our opinion is, that William S. Sharp having died in the life-time of his mother, leaving children who survived her, the appellant, as his administrator, was not entitled, under the 3d

clause of the will of William Sharp, to any share of the property, to be administered as assets of the estate. It follows, that the court erred in charging him with the amount received from the executor of William Sharp.

It appears that the will of Wm. Sharp was made in Georgia. But the decisions of the courts of that State, in reference to the rules for construing words of survivorship and substitution in wills, were not proved on the trial, and are not before us as *evidence* in the case. Whether the result would have been different, if those decisions had been made part of the evidence, we need not inquire. Upon the record as it now stands, we feel bound to give the will such construction, as would be given to a will in the same words, executed in this State.

Decree reversed, and cause remanded.