P. A. MIFLIN *v.* JAMES F. STALKER, Adm'r, &c., of R. N. FOOT, Dec'd.

*Error from Bourbon County.*

Confessions of judgment, provided for in title 11, chap. 3, civil code, must be made in open court; a judgment entered on a confession taken by the clerk in vacation, is a nullity. *Semble*, the clerk, in vacation, is only authorized by § 389 to enter in vacation a judgment rendered by the court.

An entry purporting to be a judgment rendered by the clerk in vacation, on confession of the defendant, not signed by him, is not such an acknowledgment of an existing liability, debt or claim, nor a promise to pay the debt confessed, as will renew or take the same from the operation of the statute of limitations. [§ 31 Civ. Code, Comp. L., 129.]

Demurrer to petition setting forth such an entry, sustained.

The facts of the case fully appear in the opinion of the court.

*M. V. Voss*, for plaintiff in error.

*W. C. Webb*, for defendant in error.

*Voss*, for plaintiff in error, contended :

1. That the judgment is in form proper.

2. The sections of the civil code, title 11, chap. 3, fully authorize the judgment and proceeding in this case. While the court below did not deny that the statute did in fact authorize it, yet it was contended that these sections were unconstitutional. Art. 3, sec. 1, Const., provides that the judicial power of the state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law ; and all courts of record shall have a seal, to be used in the authentication of all process. By the same article of the constitution (sec. 11), the clerk is included as a judicial officer ; and by sec. 7 of the same article, it is provided that "there shall be elected in each organized county, a clerk of the district court, who shall hold his office for two years, and whose duties shall be prescribed by law." This whole article is treating of the judicial power of the state, and must be taken and construed together. And in thus construing it, we find the clerk is a *judicial* officer, and because he performs certain ministerial duties, this does not alter or take away his judicial character. "The constitution does not pretend to point out his duties, or to place any limitation upon them ; it simply requires that they 'shall be prescribed by law.'" This section being in the same article of the constitution, and a subsequent section, would operate as a qualification or limitation.

upon the first section, if in conflict with it.  Again, if
it be true that the judicial power can only be exercised
by a court, then no judge at chambers could determine
any question.  Again, in cases of arrest, in civil ac-
tions, authorized by the 155th and 156th sections of the
code, the clerk is expressly authorized to issue the
order of arrest, and he is made thereby the sole judge
of the sufficiency of the facts set forth in the affidavit.
This is clearly a judicial act.  Again, clerks are au-
thorized to fix the amount of bail in criminal cases,
tax costs, &c.  What is a judicial act? (*Rhode Island*
**v.** *Massachusetts*, 12 *Peters*, 657.)  These sections,
authorizing the clerk to render judgments, were in
force before the adoption of the constitution, and were
made while the 27th section of the organic act was in
full force.  And it has been the uniform practice
through the state to render and enforce such judg-
ments, and their constitutionality has never been ques-
tioned, until in this case, the court *exgratia* decides
the whole thing a nullity.  We do not assert that a
clerk, referee, or judge at chambers, is a court; yet
we do assert that they possess judicial power.  Differ-
ent definitions have been given to the term court.  The
definition of Lord Coke makes a court merely a place
of justice.  Blackstone, in defining the term court,
says that in every court there must be at least three
constituent parts, the *actor*, *reus* and *judex*—the actor
or plaintiff, who complains of an injury done; the
*reus*, or defendant, who is called upon to make satis-
faction for it, and the *judex*, or judicial power, which
is to examine the truth of the fact, to determine the
law arising upon that fact, and if an injury appears
to have been done, to ascertain and by its officers to
apply the remedy.  (3 *Blck.*, 25.)  The framers of our

constitution used the word in its popular sense, includ
ing judge, attorneys, sheriff and jury, and perhaps
meant to apply the term to any person or persons
exercising judicial power. We think the following
language, which is applied to referees, is equally true
of clerks : "It may be fairly assumed (from the fact
that referees are judicial officers appointed by the court,
indeed officers of it), that their offices or places of
conducting a reference, will be looked on as a branch
of the court, and that in examinations there, both
witnesses and counsel are to be governed by the same
rules which would control them in a court of law."
(*Edwards on Referees*, 3.) The constitution deals only
in general terms, and while it may be a fair inference
to suppose that the framers of the constitution intended
to confine the general judicial power of the state to the
organized courts of the state, and not permit the exec-
utive or legislative power of the state to exercise the
power of the courts, yet it never was intended to pro-
hibit the officers of the judicial branch of the govern-
ment—officers that are part and parcel of the courts
themselves—from exercising certain limited and given
judicial and *quasi* judicial power. The object of the
provision was simply to keep the three great branches
of the government—executive, legislative and judicial—
distinct and independent, that the one might not conflict
with or encroach upon the other. The same provision
exists in the code of Iowa that does in ours, and it is
there held that while the statute must be strictly
pursued, yet, when it is, the judgment is good. And
the constitution of Iowa has the same provision as
ours. It was contended below that the judgment was
a specialty, but such is not true of judgments rendered
by courts of this state. (*Tyler's Ex'rs* v. *Winslow*,

15 *Ohio S. R.*, 364.) · Besides, the position that a judgment of this state is barred by the statute of limitations of three years, is so utterly ridiculous that no intelligent counsel would even assert or pretend it. An execution may issue upon it any time within five years after its rendition. . Again,· it is a well settled rule that no statute will be declared unconstitutional unless it is clear, beyond all reasonable doubt, that it is in direct conflict with the constitution.    6 *Cranch*, 87; *Lane* v. *Danner*, 3 *Scam.*; *The State ex. rel. Crawford* v. *Robinson et al.*, 1 *Kans.*, 17; 1 *Kent's Com.*, 447, 8, 9, 50.

· 3. The paper sued on is an original instrument, on which sixty days' time is given, and therefore had no connection with the original note, further than that it was the consideration for the new agreement.    The obligation had three years to run, from June 11, 1861, which makes it good to June 11, 1864, even if Foot was living; but Foot died before one year had expired.

4. The petition avers that upon the execution of this obligation the note was given up and delivered to · Foot, so that all liability upon the note was thereby extinguished and totally . merged in this obligation, and it was a new obligation; and if it had been only a parol one, it would have run three years from date. The sixty days' stay of execution agreed· upon, simply operated (if we do not regard it as a judgment) as a credit of sixty days.    It was, therefore (being a new contract), wholly unnecessary for Foot to sign it, and was valid and binding without any signing.

The writing was, in fact, signed by Foot, and so appears upon its face.    It certainly is a fact that Foot's name appears in the beginning and in the body of

the writing. This being admitted, it matters not whether he placed it there himself or authorized the clerk to do so. The demurrer admits the writing as set forth, and it is a uniform rule of law that it is a sufficient signing if the name appears in any part of the instrument or contract, and it need not appear at the end or usual place of signing, provided it appears from the whole instrument that the party intended to bind himself, and acknowledge his obligation. 3 *Parsons on Cont.*, 4, 5, 6 ; 1 *Bouvier's Inst.*, 366, 367.

The words of section 31 of the code are : "But such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

The words of the statute of frauds, are : "Unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized." *Comp. L.*, 569, § 5.

By a comparison of those two sections of the statute, it will be seen that in substance and effect they are one and the same.

Therefore, it is conceived that a signing sufficient to take a case out of the statute of frauds, would be a sufficient signing to take the case out of the statute of limitations.

The statute of frauds is an old statute, and has a uniform, fixed and settled judicial construction, and authority under this statute is authority under the limitation statute. For what is a sufficient signing, see *Browne on Fraud, pp.* 361 *to* 395.

"A mere letter is sufficient," (*id.*) "The mere entry of the purchaser named in the heading of an auctioneer's book is sufficient," (*id.*) "It is immaterial

whether the name be written, printed or stamped, in pencil or in ink; any are sufficient," (*id.*) "A letter or other instrument signed by the proper party, may be, for this purpose, taken in connection with a previous writing not signed, and be sufficient to satisfy the statute," (*id.*) "In regard to the place of the signature, there is no restriction; it may be at the top, or in the body of the memorandum, as well as at the foot," (*id.*, 376.) An instrument commencing in any of the following ways: "I, A. B., do make," &c.; "Mr. A. B. proposes," and no further signing, is sufficient. 11 *Iowa*, 558.

*Webb*, for defendant in error, submitted:

1. Section 387 of the code authorizes a person to "personally appear in a court," and confess judgment.

The court did not give or render judgment. "It is considered by me, David R. Cobb, clerk," &c., that the plaintiff recover, is the language of the paper.

Where did the clerk get any authority to "consider" a cause and "render" judgment? Not in the constitution; not in any statute; not in sec. 387, nor in sec. 389, of the code. These sections provide that the clerk shall enter judgments—first, where a person appears in court and confesses judgment; second, judgments confessed by attorneys upon warrant of attorney.

Sections 388 and 389 of our code are not found in the Ohio code. (*Ohio Code*, §§ 377, 381.) They have no possible connection with or relation to sec. 387, or secs. 390 and 391.

Sections 387, 390 and 391 relate to one class of judg-

ments, where a person may appear personally in court, waive process and pleadings, and confess judgment, which the clerk shall "enter accordingly," briefly stating the "cause of action." *Code,* § 390; *Nash's Pl.,* 569.

Sections 388, 389, 392 and 393 relate to judgments on warrant of attorney. So read, and these sections are intelligible. Any other classification, or reading, renders them absurd.

2. Section 389, "such judgments may be entered by the clerk at any time." What "judgments" are meant? Obviously those mentioned in section 388, and those only.

The clerk of the court is not a judicial officer for any purpose. He is an officer of the court—a ministerial officer. In administering oaths, approving undertakings, and the like, his acts are quasi-judicial only. *Edgar* v. *Greer,* 7 *Iowa* (*Clark*), 136; *Peabody* v. *Phelps,* 7 *Cal.,* 53; *Stearns* v. *Aguirze,* 7 *Cal.,* 443; 19 *U. S. Dig.,* 417; 20 *U. S. Dig.,* 574.

In this case, the act of the clerk is wholly unauthorized. His pretended "judgment" is a nullity.

All that part of the plaintiff's brief relating to the judicial power of judges, is disposed of by sec. 16, of art. 4 of the constitution. Nothing stated in a pleading by way of argument is admitted by a demurrer.

3. We deny that, as a written "instrument," the paper sued on has, or ever had, any validity.

This paper is neither signed nor sealed by Foot. It does not purport to be made by him. It is a mere memorandum, made and signed, as it purports to be, by David R. Cobb, reciting certain matters that transpired in his presence. That being done, Cobb pro-

ceeds to "consider" those matters, and declare their effect. The paper is not an agreement of any kind, nor even the evidence of an agreement or promise.

But if, as an "agreement," it was ever binding on Foot, it was barred by the statute of limitations, before this suit was commenced. The following facts appear on the face of the plaintiff's petition:

*a.* The "obligation" was signed by Cobb, April 11, 1861. *b.* Foot died, December 1, 1862. *c.* Stalker appointed administrator, November 30, 1864; and this suit was commenced June 11, 1867.

The court will take judicial notice of the stated terms of the district court. By chapter 78, laws of 1860, the district court for Bourbon county was appointed for the third Monday of April, and third Monday of September. This act was in force until May 22, 1861, when it was superseded by the act of that date, published as chapter 69 of compiled laws. The "next term" of the Bourbon district court, "after the 11th day of April, 1861," was held on Monday, April 15th, 1861. "Sixty days" from that day (the pretended credit), would extend to June 15, 1861. So, according to plaintiff's own theory, he had from June 15, 1861, to Foot's death, December 1, 1862—1 year, 5 months and 15 days—during which time he could have sued Foot; and from Stalker's appointment as administrator, November 30th, 1864, to commencement of suit, June 11, 1867—2 years, 6 months, and 10 days—to sue Stalker. These two periods, united, make 3 years, 11 months, and 25 days—and the action is barred.

In the first count in his petition, the plaintiff alleges that Stalker was duly appointed administrator "January 1, 1864." Taking this as true, and there are 11

months more to be added to the time, making nearly 5 years in all.

The quotations from "Edwards on Referees," and "Browne on Frauds," have no application whatever to the case at bar.

*By the Court*, SAFFORD, J.

The plaintiff, here and below, brought his action in the district court, declaring upon the following writing, to wit:

"*Proceedings had in Fourth Judicial District Court, Bourbon county, Kansas, in vacation:* P. A. Miflin against R. N. Foot—debt on note. Now, at this day, and in vacation of the district court, comes the said P. A. Miflin, by his attorney, C. P. Bullock, as well as the said defendant, R. N. Foot, in his own proper person; whereupon the said defendant, voluntarily, and of his own free will, confesses judgment to the said plaintiff, in the sum of one hundred and thirty-one dollars and seventy-one cents for debt, and twenty-four dollars and thirty cents damages, by way of interest, which confession is based on the attached note; therefore, it is considered by me, David R. Cobb, clerk of the district court in and for Bourbon county, in the State of Kansas, that the said plaintiff recover against the said defendant the sum of one hundred and fifty-six dollars and one cent, so confessed as aforesaid, together with costs; and that said plaintiff have hereof his writ of execution. And it is agreed, by the parties hereto, that no execution shall issue until after sixty days after the next term of the said district court.

"[L. S.]                              DAVID R. COBB,

"Clerk District Court of Bourbon County.

"April 11, 1861."

COPY OF NOTE.

"$131.71.   One day after date, I promise to pay P. A. Miflin one hundred and thirty-one dollars and seventy-one cents, for value received of him, as witness my hand and seal, this 2d day of May, 1859.

"R. N. FOOT."

The petition was filed Jan. 11th, 1867, and contained two counts—the first claiming to recover upon the writing above set forth, as upon a judgment, and the second claiming to recover upon it as upon a contract or renewal of the original note.

The defendant, James Stalker, administrator of R. N. Foot, deceased, (Foot died December 1st, 1862, and Stalker was appointed his administrator Nov. 30th, 1864,) filed his demurrer to plaintiff's petition, setting forth:

1. That said petition does not state facts sufficient to constitute a cause of action against the defendant.

2. That it appears on the face of said petition, in each cause of action therein stated, that the cause of action did not arise within three years before the commencement of this action.

The demurrer was sustained by the court, and plaintiff brings the case here for review. Two questions are presented, the determination of which disposes of the case.

And first: Is the writing set out above, a judgment, and such as would be binding upon Foot, if he was living, or upon his representatives, now that he is deceased? The writing shows, upon its face, that it was rendered as a judgment by the clerk of the court in vacation. Had he any power so to do, under the statute? The sections bearing upon this question, are as follows:

"SEC. 387. Any person indebted, or against whom a cause of action exists, may personally appear, in a court of competent jurisdiction, and with the assent of the creditor or person having such cause of action, confess judgment therefor, whereupon judgment shall be entered accordingly.

"SEC. 388. Judgments may be entered upon confession, by an attorney authorized for that purpose, by a warrant of attorney, acknowledged or proved as conveyances of land, without any previous process or proceeding ; and judgments so entered shall be a lien from the date of entry.

"SEC. 389. Such judgments may be entered by the clerk at any time, and execution shall issue thereon in the same manner as judgments rendered in open court.

"SEC. 390. The debt, or cause of action, shall be briefly stated in the judgment, or in writing, to be filed as pleadings in other actions.

"SEC. 391. Such judgment shall authorize the same proceedings for its enforcement as judgments rendered in actions regularly brought and prosecuted, and the confession shall operate as a release of errors."

If any such power is here conferred upon the clerk as would authorize him to "render judgment" in a case of this kind, we are unable to discover it.

Section 387 prescribes a rule for one class of cases, when the debtor may personally appear in court and confess judgment. In such cases the only reasonable conclusion to be arrived at is, that the judgment is to be rendered by the court, and all that the clerk has, or can have to do with it, is to enter it. § 389.

It would be a proposition too absurd to be entitled to any consideration, to hold that the legislature in one section provides that debtors may appear in court and

confess judgment, and in almost the same breath provides that the clerk might, at any time, that is, either in court or in vacation, render a like judgment. The clerk, then, who rendered what the plaintiff terms a judgment in this case, transcended his authority, and what purports to be a judgment is a nullity, and of no force whatever as such.

The other question presented in this case is : Has the writing, which we have said is invalid as a judgment, any force as an agreement or contract, such as would operate to renew the note originally given by Foot to Miflin ? In other words, did it constitute a new promise to pay, upon which suit could be maintained ? We think not. The law says : "In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise ; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

Now, this writing was not made or signed by R. N. Foot, nor does it purport to be, nor was it so signed by any one for him. How, then, can it be said to be binding on him, or his representatives, under the law just quoted ? The truth is, all that can be claimed for the plaintiff in this whole proceeding is, that Foot made a verbal acknowledgment before David R. Cobb that he was indebted to plaintiff, on the original note, to the amount of $156.03 ; but such acknowledgment, not being in writing, or signed by the party to be

charged, was insufficient to take the debt out of the statute of limitations.

It would be useless to follow the argument of counsel in this case further, as our conclusions upon the two main questions are decisive, as before remarked. We think the district court was right upon this demurrer.

All the justices concurring.