Dodge v. Coffin.

### ORLANDO DODGE v. WILLIAM COFFIN.

1. JUDICIAL NOTICE; *Constitutions of Other States.* This court will take judicial knowledge of the constitution of a sister state, so far as the jurisdiction of its courts is shown. [VALENTINE, J., dissenting.]

2. COURTS OF OTHER STATES; *Jurisdiction; Presumption.* It will be presumed, in the absence of evidence to the contrary, in favor of courts of general jurisdiction of sister states, that they have the authority they assume to exercise, and that the modes of procedure pursued by them, though different from that established by the laws of this state, are authorized by the laws of the state in which they act. [All the Justices concurring.]

3. ———— *Judgments in Vacation.* Thus, though in this state, judgments in courts of record can be entered only in term time, yet where the duly-authenticated record of a court of general jurisdiction of a sister state shows a judgment entered in vacation, it will be presumed, in the absence of any showing to the contrary, that such a judgment was authorized by the laws of that state.

4. CONSTITUTIONAL LAW; *Statute of Limitations; Act of 1870, is Void.* So much of section 1 of chapter 87, laws of 1870, as reads, "And no action shall be maintained in this state on any judgment or decree rendered in another state or country against a resident of this state, where the cause of action upon which such judgment or decree was rendered could not have been maintained in this state at the time the action thereon was commenced in such other state or country by reason of lapse of time," is unconstitutional and void, as conflicting

with section 1 of article 4 of the United States constitution, which ordains that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

### *Error from Riley District Court.*

ACTION by *Coffin*, as plaintiff, whose petition alleged, "that the said plaintiff, on the 29th of April 1872, by the consideration and judgment of the circuit court of the state of Illinois, begun and held at the court-house in Geneva, in the county of Kane, on said 29th of April, recovered against the said *Orlando Dodge*, the sum of $511.90 his debt, and his costs in and about his suit expended, taxed at $280, which said judgment, a copy of which is hereto attached marked 'Exhibit A,' still remains in said court in full force and effect, in nowise reversed or annulled," etc. The judgment itself, said "Exhibit A," shows that it was entered on a warrant of attorney, "in vacation, after a regular term of the circuit court of said Kane county, begun and held on Monday, the 5th of February 1872." *Dodge* answered, setting up two defenses—first, *nul tiel record;* second, the statute of limitations. Trial at the September Term 1874 of the district court. Verdict and judgment for plaintiff for $600.20. *Dodge* brings the case here on error for review.

*H. G. Barner & Son*, for plaintiff in error:

The court erred in permitting Coffin to introduce the record from the circuit court of Kane county, Illinois. That record was defective for the reason, that it was taken in vacation, and not in accordance with the common law, and does not come within the provisions of the U. S. constitution, art. 4; § 1, or the laws of congress passed in pursuance thereof: *Galpin v. Page*, 18 Wall. 350. Neither does it come within the provisions of our code, Gen. Stat., p. 700, § 371. At common law a judgment rendered by the clerk in vacation is a nullity, and such has been the ruling of this court: *Mifflin v. Stalker*, 4 Kas. 283. The judgment-roll from Kane county, Illinois, being the roll of a judgment taken in vacation, and entered

without the order of a judge or justice of said court, whether good in Illinois or not, was a nullity here. A judgment by confession should be made in open court, and have all the qualities, incidents and attributes of other judgments: 4 Johns. 423; Freeman on Judgments, 456, § 547. And to entitle its record to be read in other states it must be taken according to the established rules of the common law: 18 Wallace, 350.

Again, in the cognovit, or power of attorney, by which this judgment was confessed in Illinois, it is provided that Charles Wheaton, *or any other attorney of any court of record,* may confess judgment; and the judgment was confessed by one W. J. Brown, who was not only not proved to be an attorney of any court of record but does not even sign his name as such, but signs himself as attorney-*in-fact* for Orlando Dodge. We submit that where a party is not named in such a power, he must affirmatively show such a character as brings him within its purview.

Again, this Illinois judgment was rendered on two notes, both due December 22d, 1859, and the judgment was taken there on the 29th of April, 1872, more than *twelve* years after their maturity, and no payment or other renewal was made, or pretended to have been made, on them during this time. Our act of 1870, ch. 87, § 1, effectually disposes of this case. We are aware that it has been, and will again be contended, that this statute is unconstitutional. That a state, by its limitation laws, may bar a right of action upon a judgment from another state, where the limitation laws of the state to which the judgment is brought are shorter than those of the state from which it came, is too well settled to admit of controversy: 13 Peters, 172; 11 Howard, 165; 18 Wallace, 350, 457. We suppose the only real question about the constitutionality of this statute is, whether, having cut off all time for commencement, and barred any action, it has violated the provision of the United States constitution giving full faith, credit, etc. We desire to call attention to the language of the statute of 1870. It protects only persons

who were *residents of this state, at the time judgment was rendered* in such other state or country. It does not prevent judgments from other states or countries, where the parties are both residents, and both alike subject to the laws of such state or country, from being enforced here. Neither does it deprive the party of his judgment, but leaves him with it in full force in the state where he chose to take it. This is not a retrospective statute. It is prospective, and was approved March 3d 1870, while this judgment was taken April 29th 1872, more than two years afterward.

*Green & Hessen,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on a judgment rendered in the circuit court of Kane county, Illinois. Said judgment was rendered in the spring of 1872, upon two notes executed in March 1859. Attached to each note was a warrant of attorney authorizing "Charles Wheaton, Esq., or any other attorney of any court of record," to enter appearance, waive process, and confess judgment. Upon these warrants, and without any service of process, or other appearance, judgment was entered in vacation. It is insisted that this judgment having been entered in vacation, was a nullity, and *Mifflin v. Stalker,* 4 Kas. 283, is cited as authority therefor. But that case simply decides as to the practice in this state, and the authority to enter judgments in our courts at other than the regular terms. · And the question here is, not whether such judgment would be valid, if entered *in this state,* but was it valid *in Illinois,* where it was entered? *French v. Pease,* 10 Kas. 54. Now, this court will take judicial knowledge of the constitution of the state of Illinois, so far as this question is involved. *Butcher v. Bank of Brownsville,* 2 Kas. 70. And by that constitution we find that the circuit court is one of general original jurisdiction. Being a court of general jurisdiction, the presumption. is in favor of the authority which it assumed to exercise. Though the mode of procedure

be different from that established in this state, yet it will be presumed to be in accordance with that authorized by the statutes of the state in which it was rendered. In 2 Am. Lead. Cases, 5th ed., p. 647, it is said that, "it is obviously essential to the effectual operation of the design of the constitution, that the records of the judgments of other states, duly authenticated under the act of congress, should not merely prove themselves, but give rise to a presumption that the court possessed the authority which it assumed to exercise"—and many authorities from different states are cited in support of the proposition. And again it adds: "The presumption, *Omnia rite acta*, will accordingly hold good until repelled, and the burden of proof is on him by whom a record, duly authenticated, and which appears to be regular, is impugned." So that in the absence of any evidence to the contrary, the presumption would be that a judgment entered in vacation was valid, according to the laws of Illinois. But we are not left to a presumption. In *Dunham v. Brown*, 24 Ill. 93, we find such a mode of procedure upheld by the supreme court of that state.

Again, it is urged that the warrant of attorney authorizes "Charles Wheaton, or any other attorney of any court of record," to appear and confess. And the record shows that one W. J. Brown appeared and confessed, and that there is no evidence that he was an attorney of any court, and he signes himself, "attorney-in-fact" for defendant. We suppose the designation was correct, for one authorized by such a warrant of attorney is an attorney-in-fact; and in the recital of the judgment, it reads, "that the plaintiff appeared by T. C. Moore his attorney, and the defendant, by W. J. Brown his attorney." This recital is evidence *prima facie* at least, that both Moore and Brown were attorneys of the court in which the judgment was entered. But passing these considerations, it was for the defendant, upon the principles heretofore stated, to overthrow the presumption in favor of this judgment by showing if he could that W. J. Brown was not an attorney of a court of record. It is useless to inquire as to the cir-

19—15 KAS.

cumstances under which the judgment of the court of a sister state can be impeached, for here there was no testimony tending to impeach it. The testimony of Dodge, that he never employed Brown, or authorized him to appear and confess judgment, that he was never served with process, etc., is wholly immaterial. He does not deny the execution of the warrant of attorney, or question its validity; and all further matters, except perhaps whether Brown was an attorney of a court of record, are questions of law.

One other question remains. Counsel contends that no action can be maintained on this judgment because of § 1 of ch. 87, laws of 1870, which among other things, provides:

"And no action shall be maintained in this state, or any judgment or decree rendered in another state or country against a resident of this state, where the cause of action upon which such judgment or decree was rendered could not have been maintained in this state at the time the action thereon was commenced in such other state or country by reason of lapse of time."

Of the applicability of this statute there can be no question. The notes were more than twelve years past due, when the proceedings were commenced in the circuit court of Kane county; and the only testimony, that of Dodge himself, showed that he had been a resident of this state for the last thirteen years, and had not been back to Illinois since 1859. But a statute in all essential particulars exactly like this has been before the supreme court of the United States, and declared unconstitutional and void, as conflicting with § 1 of art. 4 of the federal constitution, which ordains that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." The statute which was before that court was a statute of Mississippi, and in these words: "No action shall be maintained on any judgment or decree rendered by any court without this state, against any person who at the time of the commencement of the action in which such judgment or decree was or shall be rendered was or shall be a resident of this state, in any case where the cause of action would have been barred by any act

of limitation of this state, if such suit had been brought therein." *Christmas v. Russell*, 5 Wall. 290. The similarity of the statutes is obvious, and the decision of that court conclusive upon the question.

There being no other question in the case, the judgment will be affirmed.

KINGMAN, C. J., concurring.

VALENTINE, J., *dissenting:* I cannot concur with my brethren in what they say in the first paragraph of the syllabus, and the corresponding portion of the opinion. They hold that this court can take judicial notice of the contents of the constitutions of sister states, so far as such constitutions define the jurisdictions of the courts of such states. Now if this court can do so, of course every other court in the state may do so, and not only may do so, but must do so, for a court that can take judicial notice of a thing is not at liberty to refuse when legally called upon to do so. And if courts can take judicial notice of the constitutions of other states, for the purpose of ascertaining the jurisdiction of their courts, I know of no good reason why they should not also take judicial notice of their statutes, for the same purpose. The jurisdictions of many of the courts of other states are not in any manner defined by their constitutions, but are defined by their statutes, or by their statutes and usage; and if we are to take judicial notice of the jurisdictions of the courts of other states, we must look into their statutes as well as into their constitutions. And if we can take judicial notice of the constitutions and statutes of other states for one purpose, I know of no good reason why we should not take judicial notice of such constitutions and statutes for all purposes. But the jurisdictions of the courts of other states sometimes rest, partially at least, upon their common law, or upon immemorial usage, or upon judicial decisions. Now, must we also take judicial notice of the common law, the immemorial usage, and the judicial decisions of such other states? To take judicial notice of the laws of other states,

Dodge v. Coffin.

is contrary to a well-settled principle of law. The rule is, that courts of one state cannot take judicial notice of the laws of another state, but such laws must be pleaded and proved by the party who relies upon them the same as other facts. (*Hunter* v. *Furguson*, 13 Kas. 463, 475; *Shed* v. *Augustine*, 14 Kas. 282; Sedgwick Stat. & Const. Law, 363 to 365; 5 U.S. Dig., First Series, p. 487, par. 102; pp. 745 to 750, par. 5307 to 5432, and the numerous cases there cited.) The cases are too numerous to cite in this opinion. In my opinion, this rule includes all laws of sister states, whether such laws are embodied in constitutions, or statutes, or their common law, or in judicial decisions, or in immemorial usage. In the case at bar, the court has probably adopted the rule which it has adopted, principally because of the great inconvenience of requiring in every case the party who attempts to introduce in evidence a judicial record of a court of another state, to first prove that such court had, by the laws of its own state, the requisite jurisdiction. This inconvenience would undoubtedly be great, for the opposite party would probably in nearly every case, require the evidence; and yet probably in not more than one case in a thousand would it be found that the court of said other state did not possess ample jurisdiction in the premises. But still, as I think, it would be much better, in order to avoid this inconvenience, to resort to natural and reasonable presumptions in favor of the jurisdiction of the courts, than to violate a general and universally-recognized rule of law, or to unnecessarily introduce an exception into such general rule of law. In my opinion, the courts of this state may take judicial notice of the existence and political organization of all the states. They may take judicial notice that such states have written constitutions, and written statutory laws; that their governments are republican in form, and similar to our own; that they each have an executive department, a legislative department, and a judicial department; and can take judicial notice of all the powers, privileges, and disabilities of such states, as established and defined by the constitution and laws of the United

States.* And besides this, we can take judicial notice of the kind of jurisdiction usually exercised by courts of record, by courts of general or superior jurisdiction, by probate courts, by justices of the peace, and by police magistrates. But this is about as far as we can go in taking judicial knowledge of the laws and institutions of other states, or of the jurisdiction that their courts may exercise. After this, we must resort to presumptions. And one of the first of presumptions is the following: In the absence of anything showing the contrary, we presume that the laws of other states are substantially the same as our own: *Furrow v. Chapin,* 13 Kas. 107, 113; *Hickman v. Alpaugh,* 21 Cal. 225; *Hill v. Grigsby,* 32 Cal. 55; *Sharp v. Sharp,* 35 Ala. 574, 580; *Cox v. Morrow,* 14 Ark. 603, 604, 609, et seq.; *Atkinson v. Atkinson,* 15 La. An. 491; *Crane v. Hardy,* 1 Mich. 56; *Cooper v. Reaney,* 4 Minn. 528; *Brimhall v. Van Campen,* 8 Minn. 13; *Robinson v. Douchy,* 3 Barb. 20; *State v. Patterson,* 2 Iredell, (N. C. Law,) 346; *Green v. Rugeby,* 23 Texas, 539, 544; *Rape v. Heaton,* 9 Wis. 329; *Walsh v. Dart,* 12 Wis. 635; U. S. Dig., First Series, 500, 501, paragraphs from 393 to 417. And therefore, as a corollary from this presumption, we further presume, in the absence of anything to the contrary, that a judicial record from another state, properly authenticated, and in due form according to the laws of our own state, is valid in said other state. (*French v. Pease,* 10 Kas. 51.) But the presumption in favor of the regularity and validity of judicial records, is sometimes strong enough to make the record of judicial proceedings from another state valid, although if its regularity and validity were to be determined by the laws of our own state we would hold the record or some portion thereof void. (*Keely v. Garner,* 13 Ind. 399.) In such a case, the presumption in favor of the regularity and validity of the record is stronger than the presumption that the laws of the other state are like ours; and in such a case, it is presumed that the laws of the other state are such as to make the record valid. In Arkansas it has been decided that, "In the absence of evidence to the contrary, the

court will presume in favor of the regularity of the official proceedings of a sister state, as, where the seal of a court is affixed by impression on paper, without wax, or any other tenacious substance, that the sealing was according to the laws of the state." (*State v. Lawson*, 14 Ark. 114.) In Delaware it has been decided that a record of another state, properly certified to under the *seal* of a court, is evidence that the court was a court of record. (*Smith v. Redden*, 5 Harrington, 321.) In Wisconsin it has been presumed, from the name of the court, and held that "the *circuit* court of Kent county, state of Michigan," was a court of general jurisdiction. (*Jarvis v. Robinson*, 21 Wis. 524.) Also, in this connection, see *Knapp v. Abell*, 10 Allen, (Mass.) 488, 489, and cases there cited. In New York it has been held that, "The record of a judgment in a neighboring state is *prima facie* evidence that the court by which it was rendered, had jurisdiction." (*Shumway v. Stillman*, 4 Cowen, 292, 296.) In Pennsylvania, in the case of *Wetherell v. Stillman*, (65 Penn. St. 105,) the court, speaking of the record of a judgment from New York, say, that, "Without it were shown that the court which rendered the judgment was a court of special or limited jurisdiction, no averment can be made against the conclusiveness of its record;" (page 114;) and, "The record of the judgment from New York shows that the plaintiff's costs were included in, and formed parcel of, the judgment. We are to presume that this is in conformity with the laws of that state;" (page 115.) See also, *Lapham v. Briggs*, 27 Vt. 27, 35; *Shumway v. Stillman*, 6 Wend. 447. After a careful examination of this subject, I have come to the conclusion, that, instead of saying that the courts of this state will take judicial knowledge of the laws of other states, so as to determine the jurisdiction of their various courts, we should say, that whenever a record from another state is brought to this state properly authenticated under the act of congress passed for that purpose, (1 U. S. Stat. at Large, 122,) the courts of this state will presume that such record is just what it purports to be. If it purports to be a record of a court of record, we should

presume it to be such. If it purports to be the record of a court of general or superior jurisdiction, we should presume it to be such. And as a general rule, where the record seems to be the record of a court, is attested by the clerk, with the seal of the court, and the proper certificate of the judge is attached, we should presume that the record is that of a court of record; and where the subject-matter of such record is also such as usually comes within the jurisdiction of courts of general or superior jurisdiction, we should presume, in the absence of anything to the contrary, that such court was a court of general or superior jurisdiction. Such presumptions would seldom if ever mislead a court. The record itself will generally show whether the court is one of general or superior jurisdiction, or one of limited, special, or inferior jurisdiction. And in those rare cases, where the record does not show this, let the party who would be prejudiced thereby, plead the laws of the sister state, and show by them the nature and character of the jurisdiction possessed by the court from which the record is obtained.