Speer v. M. K. & T. Rly. Co.

SAMUEL M. SPEER v. THE M. K. & T. RLY. Co., *et al.*   |23 571|
                                                         |64 581|

JURISDICTION *in Indian Territory; Presumption; Practice; Error.* In an action by a brakeman against a railroad company to recover damages sustained while engaged in running a train through the negligence of the company, an objection to the introduction of any testimony was sustained on the ground that the petition, which averred that the injury was done in the Indian country south of Kansas, contained no allegation that either plaintiff or defendant had license or legal authority to enter that country, or engage in the running of railroad trains through it, or that there was any law in force within its limits, either giving a cause of action for such a wrong or prescribing a rule of damage. *Held,* Error; that there is no presumption that a party is a wrong-doer because of entering into any state or territory of the United States or engaging therein in any ordinarily lawful occupation; the presumption is the reverse. That if we take judicial notice of the laws and treaties of the United States designed to secure to the Indians the occupation of this country, we find special reservation of a right to license the construction of a railroad through it, and from the long continuance of the defendants in running this railroad, we are to presume that they have received such license. That as the act complained of is one which both by the common and the civil law, as well as by the dictates of natural justice, entitles the injured party to compensation, we are to presume that the laws in force within that locality are so like ours as to give a right to relief; or perhaps it were better to say that no law has been enacted in that jurisdiction which countenances such a wrong, or permits it to go unredressed.

*Error from Labette District Court.*

ACTION by *Speer*, against the *Missouri, Kansas & Texas Railway Company* and the *Union Trust Company*, of New York, to recover damages for personal injuries received by him while in the service of the railroad company. Trial at the November Term, 1879, of the district court, and judgment for the defendants. New trial denied, and the plaintiff brings the case here. The opinion contains a sufficient statement of the facts.

*T. C. Cory*, and *Clough & Wheat*, for plaintiff in error :

The petition stated a cause of action against the defendant companies. (8 Kas. 642; 9 id. 620; 11 id. 83; 14 id. 524; 18 id. 59; 19 id. 267; 20 id. 515 ; also, 26 Vt. 717.)

The district court ruled adversely to the plaintiff in error, because the petition does not state what the law relative to such a case as is stated in the petition was at the time when, and the place where, the injuries were received. We submit that it was not necessary to do so. This court will, as that court should have done, take judicial notice that the common law on such subjects was in force there; and if not, then that this court will, and said district court should, have presumed the law of that place was the same as the law of Kansas on similar subjects. ( 13 Kas. 107,113; 15 id. 285; 23 N. Y. 475; 5 id. 452; 81 Pa. St. 464; Tyler on Usury, 85, 86 ; 31 N. J. 309; 18 Kas. 58.)

When employers are liable for not taking proper precautions to guard against injuries to persons in their employ, see 44 Cal. 187; 74 N. C. 734; 38 Iowa, 592; 110 Mass. 260, 262; 117 Mass. 318; 60 Mo. 160; 55 Ill. 492; 61 Ill. 162; 18 Kas. 66.)

The place where the injury happened was in that part of the country south of Kansas which was once a part of the province of Louisiana while it belonged to France and Spain, alternately, during which time the civil law was in force

therein.    The civil law as to such questions as those involved
in this case, in relation to the duties and obligations of an em-
ployer towards a servant, in the matter of furnishing safe
material and competent co-servants, superior servants, is, as
we understand it, similar to the common law. (Wharton on
Negligence, §§ 22, 23, 720.)

The province of Louisiana was ceded to the United States
in 1803, (8 U. S. Stat. at Large, 200,) and was by the act of
Congress of March 26, 1804, divided into two territories —
all thereof south of the 33d degree of north latitude being
called Orleans, ( 2 U. S. Stat. at Large, 283, § 1,) and all north
of that degree, the district of Louisiana. (Id. 287, § 12.)    The
governor and judges of Louisiana were authorized to pass
laws, etc., (id., § 12,) and the laws previously in force were
to continue in force, etc. (Id., § 13.)

By the act of March 3, 1805, said district of Louisiana
was made into the territory of Louisiana, with the same boun-
daries, (2 U. S. Stat. at Large, 331, § 1,) and the laws therein
were continued in force, etc., (id. 332, § 9); and by the act of
June 4, 1812, the name of said territory was changed to be
the territory of Missouri, with the same boundaries. (2 U. S.
Stat. at Large, 743.)    And the laws in force in said territory
of Louisiana were to continue in force, etc. (Id. 747, § 16.)

While the aforesaid part of the country south of Kansas
was part of that territory of Missouri, the legislature thereof,
in pursuance of § 4 of the last above-mentioned act, adopted
and put in force the common law of England, substantially
as it is now in this state. (Territorial Laws of Mo. 436, § 1,
act of January 19, 1816.)

By the act of March 2, 1819, Arkansas territory was erected
out of that part of the territory of Missouri, so as to include
the part of said country south of Kansas, where plaintiff was
injured; (3 U. S. Stat. at Large, 493, § 1;) and the laws con-
tinued in force. (Id. 495, § 10.)    For the enabling act to
admit Arkansas, etc., passed June 15, 1836, see 5 U. S. Stat.
at Large, 50.

By reference to the treaty, 22d of February, 1819, with

Spain, (8 U. S. Stat. at Large, 254, etc., art. 3,) it will be seen that the place of injury was conceded to belong to the United States, and therefore, of course, to be within the territory of Missouri when the common law was adopted therein in 1816, as is shown by said territorial act of 1816, and as that law —that is, the common law—thus, in 1816, became the law of the whole of the territory of Missouri, including the part thereof where plaintiff was afterward injured, as stated in his petition, it follows that the common law still remains there in force, (*Stout v. Keyes*, 2 Doug., Mich., 184, 189,) because the presumption is, that the law continues as it was, in the absence of any showing to the contrary; and as Labette county, as well as where this court is, was, with the place of injury, and the now states of Missouri and Arkansas, when said act of 1816 was adopted, all parts and parcels of one and the same territory, the laws of which were operative in 1816 throughout the whole of the then territory of Missouri, it follows that this court, as well as said Labette district court, should take judicial notice of the act of 1816, whereby the common law was so put in force and became the law of the land where said place of injury occurred.

Of course, a court takes judicial notice of all laws which have been operative here and were enacted by any civil government acting under authority of the United States and of the territorial boundaries of such civil government while this part of this state was part thereof, and therefore we ask that said judgment and decision be reversed, and a new trial granted.

*David Kelso*, for defendants in error:

It does not appear in the petition that either plaintiff or defendants had any license or legal authority to be or to do business within the Indian country, or that a cause of action ever arose or had any legal existence there, or that the law (if any existed therein) furnished the plaintiff any remedy or rule of damage.

This court will, as the court below did, take judicial notice

that the sovereignty of all that country south of Kansas and north of Texas, and lying between the western line of Arkansas and the 100th degree of longitude, west, and known as the Indian country, is vested exclusively in the United States, and that such country has been, and still is, by the treaty and law-making powers of the United States, dedicated and granted to the Indians residing therein as their place of abode; that no law, whether civil or common, except that made by the law-making power of the United States, has any force or operation therein affecting non-inhabitants thereof; that no court has been established or exists therein, having jurisdiction over or taking cognizance of any matter arising therein, not criminal, respecting any person not an Indian or a member of an Indian tribe; and that no such jurisdiction has been accorded to any court outside the limits of such country, unless one of the parties be an inhabitant of said Indian country and the other an inhabitant outside thereof, as plaintiff or defendant: and, as to this, exclusive original jurisdiction is given to the nearest United States district court. (Seventh art. of treaty between U. S. and Cherokee Nation of Indians, concluded July 19, 1866, proclaimed Aug. 11, 1866; 14 U. S. Stat. at Large, 785; Rev. Stat. of U. S., §§ 1839, 1840, 2114; and generally, ch. 4, p. 373.)

If the plaintiff was, at the time his alleged injuries occurred, a member of an Indian tribe, residing in the Indian country, and the defendants not inhabitants thereof, then, under the seventh article of the above-mentioned treaty, the nearest United States district court has original *exclusive jurisdiction* —the place where plaintiff's injuries occurred being within the boundaries of the Cherokee nation of Indians. (7 U. S. Stat. at Large, 311.) If he had no license or legal authority to be or to do business within the Indian territory, or if neither plaintiff nor defendants had any such license or authority, then the contract of service between them was in violation of the above treaty, and void. (27th art. of same treaty.) This treaty further provides, that *all persons* not in the military service of the United States, not citizens of the

Cherokee nation, are prohibited from coming into the terri-
tory or remaining in the same, with certain exceptions, which
do not help the plaintiff or parties to this suit. (27th art. of
same treaty.)

The courts will give no man a remedy when founded upon
or made in contemplation of the violation of law or a treaty.
(14 Mass. 322; 5 Johns. 327; 4 Pet. 410; 22 Vt. 184.) The
treaties and laws of the United States contemplate the Indian
territory as completely separated from that of the states, and
provide that all intercourse with the inhabitants thereof shall
be carried on exclusively by the United States government.
(*Worcester v. State of Georgia*, 6 Pet. 515.) In this country,
appropriated by the United States to the civilization and set-
tlement of the various tribes of Indians located therein and
hedged about with non-intercourse laws, and in which the
only rule of legal action is that enacted by the Indian coun-
cils, under the authority and supervision of the United States,
and which is made applicable to the lawful inhabitants there-
of, there is no ground for the assertion that the court below
should have presumed, or that this court will presume, that
either the common law of England, or the civil law of France,
or the laws of Spain, are in force or have any operation there-
in. This court, in *Furrow v. Chapin*, 13 Kas. 113, says: "We
are not bound to presume that the common law prevails every-
where or anywhere outside of Kansas."

The courts of this state have no power to send process into
the Indian territory. The attendance of witnesses at court
cannot be compelled therefrom. The taking of testimony by
deposition or commission cannot be enforced therein, and in
view of these matters, the courts of this state are asked to
afford redress, and apply the laws thereof in cases of tort oc-
curring in that country whenever and wherever sued in this
state. Let this be the established rule, and the courts on the
border would be flooded with such cases. The territories of
the United States must be under the dominion thereof, or be
without any government, as they are not subject to the juris-
diction of any state. (1 Kent's Com. 423 and 474.)

It is confidently assumed, since the constitutional and lawful powers exercising rightful authority in the Indian country have established no rule of damage, and have failed to provide any redress or remedy in cases like this, that the plaintiff cannot move into the state of Kansas, and claim a right to damages under our law.   A cause of action must have a legal existence at the time and place where the injury occurred, and that locality or sovereignty must furnish the rule of damage and the remedy.   They do not exist in expectancy, or lie in abeyance, dependent on their enforcement upon the amotion of the injured party to a state or sovereignty where such rule and remedy do exist, had the cause of action arisen therein.   If there is no right to recover for an alleged injury in the state or sovereignty where committed, there can be none in any other state or sovereignty. (19 Law R. 329; *Whitford v. Panama R. R. Co.*, 3 Bosw. 67; 23 N. Y. 465, 471; Wharton on Conflict of Laws, §§ 477, 479, and note 707; 117 Mass. 109; 5 Wall, 307; 7 id. 193.)

It matters not what law impressed the land where the plaintiff's injury happened by the enactment of the territorial government of Missouri in 1816.   The courts will officially notice that seven states have since been organized and admitted into the Union out of this territory, and that the Indian country wherein the said injuries occurred has been since carved out of it, and set apart for the exclusive use and occupancy of the Indians located therein, without any local government except that above indicated, and that the intercourse laws of the United States applicable thereto give neither the plaintiff nor defendants any right, leave or license to enter and do business therein, and without which, such acts are in contravention of law.   It follows, that unless the petition shows such right, leave or license, and that unless the law in force therein afforded a remedy for the plaintiff's wrongs, it did not state facts sufficient to constitute a cause of action, and the judgment below should be affirmed.

37—23 KAS.

The opinion of the court was delivered by

BREWER, J.: The petition filed in the lower court avers, that on the 16th day of January, 1877, the plaintiff was in the service of the defendants as a brakeman on a running train on defendants' railroad track, at a certain division thereof, in the country south of the state of Kansas, and while so engaged he was injured at said time and place in his person and health, by and through the negligence of the defendants, their servants and agents, without any fault on his part, and so forth. Issues were joined on these averments. At the trial of said cause, an objection was made by the defendants to the giving of any evidence, on the ground that the petition did not state facts sufficient to constitute a cause of action. This objection the court below sustained, and gave judgment to the defendants for costs. Of this ruling and decision the plaintiff in error complains, and brings the case on this point into this court for review.

While the petition does not distinctly name the Indian territory as the place of the injury, yet the fact so appeared, and the arguments of counsel are based upon that as a fact. We shall proceed upon that assumption. The petition charges negligence on the part of the defendants, negligence in the condition of the track, in the management of the train, and in the employment of an unfit and incompetent engineer, conductor, etc. It is very full and specific; indeed, the main criticism we should place upon it is, its unnecessary repetition and prolixity. Beyond question it would have been sufficient under repeated rulings, if it had charged the injury to have been done within the limits of this state. (*Dow v. K. P. Rly. Co.*, 8 Kas. 642; *U. P. Rly. Co. v. Milliken*, 8 Kas. 647; *K. P. Rly. Co. v. Little*, 19 Kas. 267; *U. P. Rly. Co. v. Young*, 19 Kas. 488.) Doubtless, also, it would have been sufficient if it had alleged that the civil law prevailed at the place of the injury. Wharton, in his work on Negligence, § 720, says:

"Hence we understand the rulings of the Roman jurists

and their successors, that the employer, by the nature of his contract, (*conductor omnia secundum legem conductionis facere debet,*) is bound to the servant to supply the latter with proper materials for work, and to surround him with such guards as will enable the work to be safely performed by the servant. If, through the employer's negligence, in this respect, the servant is injured, the master is liable to the servant to make good the damage."

In this the civil and the common law accord. (Wharton on Negligence, §§ 208 and 209.) The specific objection is, that the place of the injury being the Indian territory, a body of land set apart for Indian occupation, there is no allegation that either plaintiff or defendants had license or legal authority to enter that territory, or engage in the running of railroad trains through it, or that there was any law in force within its limits either giving a cause of action for such a wrong, or furnishing a remedy therefor, or prescribing a rule of damage.

We do not think the objection well taken. We are not to presume that any party is a wrong-doer in going into or being within any state or territory of the United States. We know that the Indian territory is set apart for the occupation of Indians, because we take judicial knowledge of the laws and treaties of the United States, and in those treaties we find express reservation of a right to license the building and running of a railroad through that territory. (Treaty between the United States and the Creek Indians, of July 19, 1866, 14 U. S. Stat., p. 787, art. 5; treaty between the United States and the Choctaws and Chickasaws, 14 U. S. Stat., p. 771, art. 6.)

Now the petition, by alleging that the defendant had had, for a long time prior to this injury, knowledge of the defective condition of this track, and had failed to repair it, shows a long-continued occupation. Perhaps, also, we may take judicial knowledge that for years prior thereto the defendants had been running trains out of this state and into and through that territory. Indeed, the struggle between two railroad corporations to first complete a track to the south

line of the state, for the sake of securing a right of way through the Indian country, is a part of the general history of the state. At any rate, we know that a railroad of many miles in length is not built in a day. Hence, from its very continuance, we may presume that such building and running of a line of railroad by the defendants was with the knowledge and assent of the general government, which by express treaty stipulation had power to license and permit it; so that whether we rest upon general presumptions, or upon any matters of which we may take judicial knowledge, we must hold that defendants were guilty of violating no law in building or running a railroad through the Indian country.

So far as regards the law in force in that country, we may also resort to presumptions. "The general rule is, that in the absence of proof to the contrary, the court will presume that the laws of a foreign state are precisely like the laws of the state in which the court is held. That is to say, the laws of a country to whose courts a party appeals for redress, furnish in all cases, *prima facie*, the rule of decision; and if either party wishes the benefit of a different rule or law, 'as, for instance, *lex domicilii*, *lex loci contractus*, or *lex loci rei sitœ*, he must aver and prove it." (Tyler on Usury, p. 85; *Monroe v. Douglas*, 5 N. Y. 447.) Or, as said by Judge VALENTINE, in his opinion in the case of *Dodge v. Coffin*, 15 Kas. 285: "In the absence of anything showing the contrary, we presume that the laws of other states are substantially the same as our own;" and in support of this, he cites a number of authorities. See also *Hynes v. McDermott*, N. Y. Common Pleas; 19 Am. Law Reg. (N. S.) 219; *O'Rourk v. O'Rourk*, Sup. Ct. Mich., reported in 9 Reporter, p. 471. Now if the cause of action is one which, if arising within this state, would spring solely from some special and local statute, and not independent of statute from general law, it may perhaps be that there would be no presumption of a similar statute in the foreign jurisdiction, and that a special averment of its existence would be essential. But that is not this case, and therefore calls for no determination at present.

Here, the act complained of is one which, independent of any local statute, and by virtue of general law, both civil and common, gives to the injured party a right of action. It is an act which, by the plainest principles of natural justice, entitles the sufferer to compensation; and that such an act, wherever done, creates a cause of action, we are to presume. Perhaps it may be better stated to say that we are to presume that no local enactment exists to deprive a party of a cause of action to which natural justice would otherwise entitle him. If the charge were that defendant had taken and appropriated to his own use the property of plaintiff, must the petition also allege that the law of the state where this wrong was done forbids such wrong? We think not; the existence of a local law which countenances such a wrong, or denies relief therefor, is matter of defense. Nay, more: we think that if it were affirmatively shown that the act was done in a locality in which there was and had been no organized government, and no body of law ever put in force, that a party coming into our courts would be entitled to relief in accordance with the law and policy of this state.

Without pursuing this line of thought further, we hold that, *prima facie*, a cause of action was stated, and that the district court erred in sustaining the objection.

The judgment of the district court will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.